UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JERRY MUHAMMAD, | ) | CASE NO.1:10CV1771 |
|  | ) |  |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) |  |
|  | ) | MEMORANDUM OPINION & |
| DON JOHNSON, et al., | ) | ORDER |
|  | ) |  |
| DEFENDANTS. | ) |  |
|  | ) |  |

This is a civil rights action by *pro se* plaintiff Jerry Muhammad, an African American, who alleges that defendant Don Johnson, a white police officer, ejected him from a city festival in Aurora, Ohio on July 4, 2010 because of his race. Before the Court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Doc. 18.) Plaintiff filed an opposition (Doc. 20), to which defendant filed a reply (Doc. 21). Plaintiff filed a surreply (Doc. 22). This matter is ripe for disposition. For the reasons that follow, defendant's motion is **GRANTED**.

**I.  BACKGROUND**

Plaintiff Jerry Muhammad has operated an ice cream truck since 1995. (Muhammed Dep. at 30.) In 2005, he began selling ice cream in Aurora, Ohio. (*Id*.) In the spring of that year, an Aurora police officer informed Mr. Muhammad that he needed a permit to conduct mobile ice cream sales in the city. (*Id*. at 31, 38.) (*Id*.) Subsequently, Mr. Muhammad visited the Aurora police department and filled out an application to solicit ice cream sales and submitted information for a background check. (*Id*. at 37.) According to Mr. Muhammad, he

1

experienced a long delay in hearing back from the city and received conflicting information from city officials as to the need for a permit. (*Id*. at 48; Doc. 20-1 at 1.) Mr. Muhammad filed a complaint of discrimination against the city with the Ohio Civil Rights Commission ("OCRC"). (Muhammad Dep. at 48.) The OCRC mediated a resolution between Mr. Muhammad and the city whereby the city acknowledged that Mr. Muhammad did not need a permit to engage in mobile ice cream sales. (*Id*. at 54-55; Doc. 22-2 at 1.) As a result, Mr. Muhammad dismissed the OCRC charge against the city. (*Id*.) Mr. Muhammad testified that Aurora Chief of Police, Seth Riewaldt, later confirmed by telephone that Mr. Muhammed did not need a permit to sell ice cream in Aurora. (Id. at 55-56.)

From 2006 to 2008, Mr. Muhammad sold ice cream from his truck in and around Aurora and at the city's annual Independence Day Festival without any issues and without a mobile ice cream vendor permit. (Muhammad Dep. at 79, 83-84.) Beginning in 2008, Mr. Muhammad chose to work a route closer to his home in Akron and stopped selling ice cream in Aurora except for the city's annual July 4th festival. (*Id*. at 90.) The parties do not dispute that he participated in this festival every year from 2006 until 2009.

On May 26, 2009, the City of Aurora passed Ordinances 755.01 through 755.09 regulating mobile frozen dessert sales. (Riewaldt Aff. ¶ 3.) Ordinance 755.02 provides, in relevant part, that mobile ice cream vendors shall first obtain a permit for such activity from the Chief of Police. AURORA, OHIO, CODIFIED ORDINANCES § 755.02(a) (2011).[1] Any person found

---

[1] The ordinances define mobile frozen dessert sales as the sale of frozen desserts by a person moving from place to place while making or attempting to make the sale from a vehicle or container. Aurora, Ohio, Codified Ordinances § 755.01(b) (2011). A vendor is defined as any person who sells frozen desserts from a mobile vehicle while it is operating within the public right of way within the City of Aurora. Aurora, Ohio, Codified Ordinances § 755.01(d) (2011).

in violation of the ordinance may be charged with an unclassified misdemeanor resulting in a fine up to $500.00. AURORA, OHIO, CODIFIED ORDINANCES § 755.99 (2011).

It is undisputed that Mr. Muhammed did not seek a mobile ice cream vendor permit in either 2009 or 2010. According to Mr. Muhammad, the reason he did not obtain a permit was because Chief Riewaldt had told him in 2005 he did not need one to sell ice cream in Aurora. (Muhammad Dep. at 89.)

In the spring of 2010, as in years past, Mr. Muhammad applied to participate as a vendor in the City of Aurora's annual Independence Day Festival. Mr. Muhammad paid the $50.00 registration fee and obtained approval from the City of Aurora Parks and Recreation Division to sell ice cream at the festival, which was held on Sunday, July 4, 2010 from 4:00 p.m. until dusk at Sunny Lake Park in Aurora, Ohio. (Muhammad Dep. at 94; Doc. 20-1.)

On July 4, 2010, at approximately 11:30 a.m., Mr. Muhammad arrived at the park, accompanied by his young son and his son's friend. (Muhammad Dep. at 98.) An Aurora police officer greeted him at the gate and asked him to see his permit. (*Id.*)Mr. Muhammad showed the officer the registration paperwork he had received from the city recreation division indicating that he had permission to sell ice cream at the festival. (Muhammad Dep. at 98-99.) The officer opened the gate and escorted Mr. Muhammad, along with his ice cream truck, to his assigned location in the vendor area. (Muhammad Dep. at 99.) Mr. Muhammad began selling ice cream at approximately 12:00 p.m. (*Id*. at 104.)

At approximately 5:00 p.m., Susan Wright, an administrative assistant to the Aurora Chief of Police,[2] told Officer Johnson that a group of women had complained that Mr. Muhammad was drunk and did not have a permit to operate his ice cream truck at the festival.

---

[2] Ms Wright assists the Chief with administration and issuance of permits in City of Aurora. (Riewaldt Aff. ¶ 5.)

(Johnson Aff. ¶ 6; Doc. 18-3 at 5.) Officer Johnson interviewed the women, and returned to Ms. Wright, who told him that she did not believe that Mr. Muhammad had a mobile ice cream vendor permit. (Johnson Aff. ¶ 8.) Officer Johnson then called Police Chief Riewaldt for guidance on the application of the city ordinances regulating mobile vendors to Mr. Muhammad's sale of ice cream at the festival. (Johnson Aff. ¶ 9; Riewaldt Aff. ¶ 6.)

Chief Riewaldt advised Officer Johnson that the city ordinance required a permit to engage in mobile ice cream sales at the festival. (Riewaldt Aff. ¶ 7.) He then instructed Officer Johnson to ask Mr. Muhammad to produce his permit, and if Mr. Muhammad could not do so, to tell Mr. Muhammad that he was not permitted to sell ice cream at the festival, escort him from the premises, and instruct him to obtain a permit application from the police department. (Riewaldt Aff. ¶ 8l; Johnson Aff. ¶¶ 10-11.)

Following this conversation, Officer Johnson and another Aurora police officer, Robert Hagquist, approached Mr. Muhammad's van and knocked on the front window. (Muhammad Dep. at 108; Johnson Aff. ¶ 12.) Mr. Muhammad was asleep in the front seat, but there was no indication that he had been consuming alcohol. (Muhammad Dep. at 108; Doc. 18-3 at 5.) Officer Johnson asked Mr. Muhammad if he had a permit to sell ice cream as required by the city ordinance. (Muhammad Dep. at 108; Johnson Aff. ¶ 13.) Mr. Muhammad showed the officers his registration paperwork from the city recreation division and explained that he was allowed to participate as a vendor at the festival. (Muhammad Dep. at 108; Johnson Aff. ¶ 14.) When Mr. Muhammad could not produce a mobile vendor permit, Officer Johnson told him that he had to stop selling ice cream at the park and directed him to obtain the necessary permit from the Aurora Police Department. (Muhammad Dep. at 110, 114; Johnson Aff. ¶ 15.) Mr. Muhammad objected to his removal and told the officers that he only needed the authorization of

4

the recreation division to sell his products at the festival and not a general permit from the city. (Muhammad Dep. at 114; Doc. 18-3 at 5.) Officer Johnson disagreed, and the officers then escorted Mr. Muhammad and his ice cream truck out of the park. (Johnson Aff. ¶ 16; Doc. 18-3 at 5.) Prior to the festival in 2010, Mr. Muhammad had not had any interactions with Officer Johnson. (Muhammad Dep. 85.)

Following the festival, Chief Riewaldt reviewed the ordinance and the circumstances surrounding the removal of Mr. Muhammad from the park and determined that the Aurora Parks and Recreation Division's approval of Mr. Muhammad's participation in the festival as a vendor was sufficient for the limited purpose of selling ice cream within the park on July 4, 2010. (Riewaldt Aff. ¶ 9; Johnson Aff. ¶ 18.) Chief Riewaldt asserts that his mistaken application of the city ordinance was due to its relative newness and his lack of experience in enforcing the ordinance. (Riewaldt Aff. ¶ 11.) At the time he instructed Lt. Johnson, he failed to recall that the ordinance only applied to mobile ice cream sales, that is, sales occurring on city streets as opposed to stationary sales at a city park. (Riewaldt Aff. ¶ 11.)

Subsequently, Mr. Muhammad filed this action under 42 U.S.C. § 1983 against Officer Johnson, and the Aurora Parks and Recreation Division, seeking damages for violation of his civil rights. The Complaint asserts a § 1983 cause of action for an alleged violation of plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff asserts that defendant Johnson selectively enforced the city mobile frozen dessert vendor law against him based upon his race, African American. Mr. Muhammad testified at his deposition that the impetus behind the officer's inquiry about his permit was the complaint of a nearby, white food vendor:

5

> Q. Okay. Do you have any personal knowledge as to what initiated Officer Johnson's initial contact with you?
>
> A. The only thing I can think of was the snow cone booth sitting beside me and the lady with the snow cone booth, because as I'm being escorted out of the park I see her standing at the gate. And by then she has left her vending machines and she's left all her vendors and all her workers and she's at the end of the driveway, like right into the driveway, looking at the officer, looking at me being put out of the park.
>
> Q. Okay.
>
> A. And I looked and I looked over at her and I said, wow, you know, why are you down here at the end of this gate when all your stuff is up there? You're the reason I got put out of here. I don't know what you told this guy, but, I mean, I don't know. I can't, you know, I can't under oath say, yes, she did it. I didn't see that happen, but this is the only thing that came to my mind. Why else would this happen?
>
> Q. And so it's—you're making that assumption?
>
> A. Right, right. I'm assuming that. I mean, I can't say he talked to her. […]

(Muhammad Dep. 102-03, 105-06, 121.) Mr. Muhammad testified that, to his knowledge, the officers never questioned the white, snow cone vendor stationed next to his van about having a permit. (Muhammad Dep. 121-22.) When asked why he believed that Officer Johnson's decision to remove him from the park was the result of racial prejudice, Mr. Muhammad testified that,

> A. The only other reason—the only thing I can come up with why, I mean, is, because the reason I come to that conclusion is, because it just didn't make sense.
>
> There was no reason for you to ever even approach me about anything.
>
> […]
>
> Q. Do you have any personal knowledge, and I might have asked, again, personal knowledge, setting aside any type of conception as to –
>
> A. That's my opinion of the guy based on the way he presented himself to me.
>
> Q. Okay.

> A. Now I personally don't know him, never had any dealings with him.
>
> Q. Do you have any personal knowledge of what initiated his contact with you, though? I am talking personal knowledge, not a guess or an assumption.
>
> A. No, I don't know. I don't even know where he came from or why he even came after me.

(Muhammad Dep. 123-24.)

Chief Riewaldt maintains that his instructions to Officer Johnson on July 4, 2010 were based solely on his interpretation of the City ordinance under the circumstances, and not upon Mr. Muhammad's race. (Riewaldt Aff. ¶¶ 10, 12.) Officer Johnson also maintains that his actions were motivated by enforcement of the city ordinance only, and not by Mr. Muhammad's race. (Johnson Aff. ¶ 19.) Defendant Johnson argues that summary judgment is appropriate because the facts show that his actions were not motivated by a discriminatory purpose or intent and did not have a discriminatory effect. Defendant also argues that he is entitled to qualified immunity.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure, addressing Summary Judgment, provides in relevant part as follows:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> [ ... ]
>
> (c) Procedures.
>
> (1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

7

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989)

(*citing Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III.    DISCUSSION

#### A.  Selective Enforcement

"It is axiomatic that the Equal Protection Clause of the Fourteenth Amendment protects citizens from police action that is based on race." B*ennett v. City of Eastpointe*, 410 F.3d 810, 817-18 (6th Cir. 2005) (citing *United States v. Avery,* 137 F.3d 343, 352 (6th Cir. 1997)). The plaintiff's claim here is one of selective enforcement, and therefore, he must establish that the challenged police action "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States,* 470 U.S. 598, 608 (1985). The standard for establishing a selective enforcement claim is a demanding one; "there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary." *Stemler v. City of Florence,* 126 F.3d 856, 873 (6th Cir. 1997).

To show discriminatory effect, a plaintiff can proffer evidence showing similarly situated individuals of another race were treated differently through statistical evidence or identifying a person of another race who the police treated differently. *King v. City of Eastpointe,* 86 Fed. Appx. 790, 802 (6th Cir. 2003) (citing *United States v. Armstrong,* 517 U.S. 456, 465 (1996)). To show discriminatory purpose, a plaintiff can proffer "evidence that an official chose

9

to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *King,* 86 F. App'x at 802 (citing *Wayte,* 470 U.S. at 610) (internal quotation marks omitted). "Once a prima facie case is established through statistics or other evidence, the government must articulate a race-neutral reason for its action. […] The [plaintiff, however,] retains the ultimate burden of proving discrimination." *Avery*, 137 F.3d at 356.

Plaintiff has not satisfied his burden of proving discrimination. Defendant Johnson has articulated a race-neutral reason for his actions – his good faith reliance upon Chief Riewaldt's misinterpretation of city ordinance. Plaintiff contends that defendant Johnson acted with racial animus, when based on the "lie[s] of some white ice cream vendors," he asked plaintiff to present a permit but not the white vendors. The Sixth Circuit has found discriminatory purpose lacking where the only evidence of a defendant's racial animus was the plaintiffs' contention that a similarly situated, non-protected individual was treated differently than they were. *See Gardenhire v. Schubert,* 205 F.3d 303, 320 (6th Cir. 2000) ("While such reasoning would be sufficient in establishing a *prima facie* Title VII case, the standard for a selective enforcement claim is much more demanding.").

In short, plaintiff has presented no evidence of discriminatory effect or purpose. *See Gardenhire*, *205* F.3d at 318-20 (holding plaintiffs not similarly situated to neighboring store's owners where police had received a report of criminal conduct by plaintiffs but no report implicating the other store's owners). The evidence fails to demonstrate that the other vendor in question was in fact similarly situated or was not subjected to the same misapplication of the city's permit ordinance. There is no evidence that the other white, mobile ice cream vendor participating at the festival did not have a permit. Nor is there any evidence that defendant

Johnson received a report that the other vendor did not have a permit. Finally, any issues that defendant had with of the city in 2005 over his mobile ice cream sales did not involve Officer Johnson and do not demonstrate that his actions on July 4, 2010 were improperly motivated by race.

Moreover, even assuming, *arguendo*, that the complaint about plaintiff received by Officer Johnson was motivated by racial discrimination, that motive or purpose cannot be transferred to Officer Johnson. *Gaughan v. City of Cleveland*, No. 1:05CV180, 2005 WL 3216269, at *13-15 (N.D. Ohio Nov. 29, 2005) (holding complainant's disagreement with speaker's message or viewpoint not transferrable to police officer's enforcement of noise ordinance alleged to be in violation of speaker's free speech rights).

Plaintiff has failed to establish that Officer Johnson acted with discriminatory purpose, nor has he presented the "clear evidence" of misbehavior sufficient to sustain his selective enforcement claim to overcome the presumption that Officer Johnson properly discharged his official duties. Accordingly, defendant Johnson is entitled to summary judgment on plaintiff's selective enforcement claim.

### B. Qualified Immunity

Qualified immunity shields from liability government officials performing discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Stated differently, a "defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trs.,* 583 F.3d

394, 400 (6th Cir. 2009) (citing *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir. 2008)). When a defendant raises a qualified immunity defense, the burden is on plaintiffs to prove that qualified immunity does not shield the officials. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

The Sixth Circuit has typically followed the two-step sequential inquiry set forth in *Saucier v. Katz,* 533 U.S. 194 (2001). Under *Saucier,* the court first asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. If the answer to this initial inquiry is "no," "there is no necessity for further inquiries concerning qualified immunity." *Id.* If, however, a violation could be made out, the "next, sequential step is to ask whether the right was clearly established. This inquiry [ ] must be taken in light of the specific context of the case, not as a broad general proposition [.]" *Id.* The Court is free to consider the *Saucier* "questions in whatever order is appropriate in light of the issues before" it. *Moldowan v. City of Warren,* 570 F.3d 698, 720 (6th Cir. 2009).

Because the Court has determined that Mr. Muhammad's constitutional rights were not violated, the Court need not reach the question of qualified immunity. *Siegert v. Gilley*, 500 U.S. 226 (1991). Even so, at most, the evidence before the Court supports an inference of negligence, which is insufficient to overcome a defense of qualified immunity. Qualified immunity is only abrogated upon a showing of a knowing or intentional violation of a person's constitutional rights. *Ahlers v. Schebil*, 188 F.3d 365, 373-74 (6th Cir. 1999). "If the officer's mistake as to what the law requires is reasonable ... the officer is entitled to the immunity defense." *Id; Malley v. Briggs,* 475 U.S. 335, 341 (1986) (the qualified immunity doctrine

"provides ample protection to all but the plainly incompetent or those who knowingly violate the law").

Here, the evidence demonstrates that Officer Johnson reasonably relied upon the Chief's interpretation of the city's permit ordinance. There is no evidence that he acted with the intent to violate Mr. Muhammad's rights. Accordingly, summary judgment is also warranted on the grounds of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**. This case is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

Dated: October 6, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**